UNITED STATES BANKRUPTCY COURT     **FOR PUBLICATION**
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

                                         Case No. 05-86264-ast

Nancy DeRise ,
                                         Chapter 7

                      Debtor.
-------------------------------------------------------------------x
Marc A. Pergament,
                      Plaintiff,              Adv. Pro. No.06-8011-ast

          - against -

Nancy DeRise ,

                      Defendant.
-------------------------------------------------------------------x

## MEMORANDUM OPINION

**APPEARANCES:**

                    Marc A. Pergament, Esq.
                    Weinberg Gross & Pergament
                    400 Garden City Plaza - Suite 403
                    Garden City, NY 11530

                    Richard F. Artura, Esq.
                    Phillips, Weiner, Quinn & Artura
                    165 South Wellwood Avenue
                    PO Box 405
                    Lindenhurst, NY 11757

HON. ALAN S. TRUST, United States Bankruptcy Judge:

## Issues Before the Court

Pending before the Court is the Complaint filed by Marc A. Pergament, Chapter 7

Trustee, against Nancy DeRise (the "Debtor"), seeking an order denying Debtor's

discharge under 11 U.S.C. §727.

## Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§157(b)(2)(J) and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

## Findings of Fact and Conclusions of Law

The following constitute this Court's findings of fact and conclusions of law made pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## Procedural History

On September 13, 2005, Debtor, Nancy DeRise (hereafter, "Debtor), filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. [Main Case dkt item 1][1] This adversary proceeding was commenced on January 6, 2006.

On October 12, 2006, in accordance with an Order of the Court, the parties filed a Joint Pre Trial Statement (the "2006 Pre Trial Statement" or the "PTS"). [dkt item 10] On November 8, 2006, the Court conducted a trial in this adversary proceeding.

On May 4, 2007, the Court issued its Memorandum of Decision and Order Dismissing Trustee's Complaint Objecting to Debtor's Discharge, and denied all relief sought by the Trustee (the "2007 Order").[2] The Trustee filed an appeal from the 2007

---

[1]References to docket items from the Main Case are to items filed in the main bankruptcy case, 05-86264-ast. Unless otherwise noted, all other references to docket items are to items filed in this adversary proceeding, 06-8011-ast. References to the Trial transcript will be Tr. at __.

[2]The Court notes, however, that contemporaneous with denying the Trustee's complaint, the Court entered a separate Memorandum of Decision Imposing Sanctions Against the Debtor (the "Sanctions Opinion"). [Main Case dkt item 21] The Sanctions Opinion, inter alia, awarded the Trustee monetary relief against Debtor, and is further discussed infra.

Order.

On March 27, 2008, the United States District Court for the Eastern District of New York, per Judge Bianco, issued its Memorandum and Order, reversed the 2007 Order, and remanded this matter to this Court for proceedings consistent with that Court's opinion (the "2008 Order").  In re DeRise, No. 07-CV-3083 (JFB), 2008 WL 850253 (E.D.N.Y. Mar. 27, 2008).

On May 1, 2008, this Court conducted a status conference with the parties in this adversary proceeding.

On June 4, 2008, this Court issued a Pre Trial Order, which, inter alia, set a Final Pre Trial Conference for July 25, 2008, and set a trial date of September 18, 2008 (the "June 4 Order"). The June 4 Order also ordered the parties to file and serve by July 7, 2008, a statement stipulating to the admissibility of the exhibits designated in the 2006 Pre Trial Statement to which each party stipulates, and stating any objection, together with a detailed explanation of the grounds therefor, as to the admissibility of any of the exhibits designated in the 2006 Pre Trial Statement to which either party did not stipulate.  The parties were further ordered to file and serve by July 18, 2008, any response to any timely objection. The parties complied with these deadlines.  Debtor objected to the admission of trial exhibits 19, 20 and 21. [dkt item 37] The Trustee did not object to any of trial exhibits 1 through 23. [dkt item 38]

At the July 25, 2008 Final Pre Trial Conference, based on the June 4 Order, the PTS, the transcript of the original trial, the 2008 Order, the arguments, and the announcements of the parties, the Court overruled the Debtor's objections and admitted trial exhibits 1 through and including 23 from the original trial.  The Court then inquired

whether either party wished to conduct any further examination of witnesses based on the Court's ruling on the admission of the objected-to exhibits.  The parties waived further examination of witnesses and also waived closing argument.  Both sides then rested. Based thereon, the Court vacated the trial scheduled for September 18, 2008, and took this matter under submission.

## **Factual Background**

When Debtor filed her bankruptcy case, she initially failed to file her bankruptcy schedules.  She subsequently failed to attend the scheduled Section 341 Meeting of Creditors.  On November 10, 2005, the Trustee filed a Motion to compel Debtor to file her Schedules and Statement of Financial Affairs, and to attend her §341 meeting. [Main Case dkt item 8; Trial Ex. 4]  The Court entered an Order on November 30, 2005, granting the Trustee's Motion.  [Main Case dkt item 12; Trial Ex. 5]  Richard F. Artura appeared as Debtor's Counsel on March 13, 2006.  [Main Case dkt item 20; PTS Stipulation ¶13][3]   Debtor filed her Schedules and Statement of Financial Affairs on March 17, 2006.  [Main Case dkt item 21; Trial Ex. 7; PTS Stipulation  ¶13 ] Debtor appeared for her adjourned §341 meeting on July 18, 2006. [PTS Stipulation  ¶19]

## **The Trustee's Claims**

In the Trustee's Complaint, he objects to Debtor's discharge on three (3) separate grounds under 11 U.S.C. §727(a), as follows: (1) under Section 727(a)(6), alleging the Debtor failed and refused to obey the Order of the Court compelling her to file Schedules and Statement of Financial Affairs, and to appear at her §341 meeting; this

---

[3]References to facts to which the parties stipulated in the PTS are hereafter referred to as PTS Stipulation ¶ __.

complaint is based on Debtor allegedly refusing to comply with the Order issued by the Court on November 30, 2005, which ordered the Debtor to "file Schedules A, B, C, E, G, H, I, and J and the Statement of Financial Affairs by December 5, 2005," and to "appear for her 341 Meeting on December 13, 2005" (the "Deficiency Order"); (2) under Section 727(a)(4), alleging Debtor "knowingly and fraudulently, in or in connection with the case made a false oath or account"; specifically, this complaint centers around an allegation that the Debtor's Schedules and her Statement of Financial Affairs were marked with material inconsistencies, false entries and omissions; and (3) under Section 727(a)(3), alleging Debtor has "concealed . . . falsified, or failed to keep or preserve any recorded information, . . . from which Debtor's financial condition or business transactions might be ascertained, unless such act or failure to act  was justified under all circumstances of the case;" this complaint alleges that Debtor concealed or falsified or failed to keep recorded information with respect to (A) a second mortgage for $18,147.69 against her former matrimonial residence in Holtsville, New York (the "Residence") which she and her then husband, Michael DeRise, granted to the United States Department of Housing and Urban Development ("HUD") on January 24, 2006 (the "Second Mortgage"), (B) an accounting for $8,074 in post-petition rent from an unrelated third-party boarder, Ming Yu ("Yu"), for a bedroom in the Residence (the "Post-Petition Rent"), and (C) the amount of monies she received both before and after the petition date in child support and maintenance from her former husband.

### The Petition, The Debtor, the Deficiency Order, and The Lack of Full Disclosure

The Debtor filed a pro se, "barebones," petition for relief under chapter 7 on

September 13, 2005.  She did not file her Schedules (with the possible exception of Schedule D[4]), nor did she file her Statement of Financial Affairs when she filed her petition. [PTS Stipulation ¶1; Trial Ex. 1]

In connection with Debtor's initial filings, she filed a Certification and Signature of Non-Attorney Bankruptcy Petition Preparer, in which a Claudia W. Webber disclosed, pursuant to 11 U.S.C. §110, that she received from Debtor a $250 fee for services in connection with this case. [Trial Ex. 1]  Debtor also filed a sworn statement attesting to her payment to Ms. Webber. [Trial Ex. 1][5]

On September 21, 2005, the Clerk of the Court sent Debtor a Notice of Deficient Filing, specifying the missing bankruptcy papers she was required to file under Rule 1007 of the Federal Rules of Bankruptcy Procedure by no later than September 28, 2005.  [PTS Stipulation ¶2; Trial Ex. 2]  Debtor failed to file these documents by this deadline.   [PTS Stipulation ¶ 10]   Debtor also failed to appear for the statutory meeting of creditors under §341that had been initially scheduled for October 12, 2005. [PTS

---

[4]The record  is unclear whether Debtor timely filed Schedule D with her petition. Schedule D would have stated Debtor's estimation of the value of the Residence and the amount of any mortgage liens against it. In the Notice of Deficiency, Schedule D is excepted from the list of non-filed schedules. The Court has not been able to locate a Schedule D that was allegedly filed along with the petition.

[5] The role of Ms. Webber may have been probative because, in Debtor's Answer to the Complaint herein, Debtor averred that she did not file her Schedules and her Statement of Financial Affairs either with her petition or thereafter, because she was advised not to do so by Ms. Webber.  Debtor further averred that she did not intentionally refuse to comply with the relevant provisions of the Bankruptcy Code, the Bankruptcy Rules or the Deficiency Order, and that her reliance upon misleading advice from Ms. Webber should justify her failure to comply timely with the Deficiency Order. Ms. Webber had been subpoenaed to testify in the main bankruptcy case in connection with various motions, including the Trustee's motion to evict Debtor and her family  from certain property and Debtor's motion to dismiss or convert her main case. [Main Case dkt items 16, 23 and 26]  Ms. Webber initially refused to testify without counsel (No Docket Entry for March 29, 2006), and later invoked her Fifth Amendment privilege against self incrimination.  Subsequently, Ms. Webber was banned from practice by this Court in an adversary proceeding styled U.S. Trustee v. Webber, Adversary Pro. No. 06-8197-sb. [Trial Ex. 23]  Because the Trustee objected at trial to any testimony from Debtor regarding her conversations with Ms. Webber, and the Court sustained those objections, this Court cannot analyze the impact Ms. Webber's advice may have had on Debtor's actions. [Trial Tr. at 49-50]

Stipulation ¶ 4]

On November 10, 2005, the Trustee filed a motion for an order compelling Debtor to file complete Schedules and her Statement of Financial Affiars ("SOFA"), with service by mail upon Debtor at her Residence.  [PTS Stipulation ¶ 6; Trial Ex. 4]  Debtor did not oppose the Trustee's motion. [PTS Stipulation ¶ 6]

On November 30, 2005, the Court, by default, issued the Deficiency Order. The Deficiency Order provides in pertinent part as follows:

> ORDERED, that the Debtor shall file Schedules A, B, C, E, G, H, I and J, and the Statement of Financial Affairs on or before December 5, 2005, and it is further
>
> ORDERED, that the Debtor shall appear for her 341 meeting on December 13, 2005 at 11:30 a.m. at the Office of the United States Trustee, Long Island Federal Courthouse, 560 Federal Plaza, Central Islip, New York.

[PTS Stipulation ¶ 8; Trial Ex. 5]

Debtor failed to file the outstanding Schedules and the SOFA by the December 5, 2005 deadline. [PTS Stipulation ¶ 10] However, the Trustee had not served a copy of the Deficiency Order on Debtor until December 9, 2005, but then by both first class mail and by certified mail. [PTS Stipulation ¶ 9; Trial Ex. 6]   As a practical matter, Debtor may not have had notice of the December 5, 2005 deadline; however she certainly knew or should have known of this Court's Deficiency Order by December 12, 2005.

Debtor did not file her SOFA and her completed Schedules until March 17, 2006 (the "March 17 filings"), over six months after the petition date. [PTS Stipulation ¶18; Trial Ex. 7]   As further set out below, the March 17 Filings were also deficient. Moreover, Schedule F (General Unsecured Claims) was not filed until June 23, 2006. [Trial Ex. 8]  Debtor did not appear for her §341 meeting on December 13, 2005.  Debtor

finally appeared for her §341 meeting on July 18, 2006. [PTS Stipulation ¶ 19]

As of the Petition Date, Debtor's assets included her Residence, which, had a fair market value of $430,000, and was subject to a first mortgage of $210,880.  Debtor claimed that every item of personal property she owned was exempt under New York State law, and also claimed a homestead exemption of $50,000 under New York State law.  [Trial Exs. 7, 8]  The Trustee did not file any objection to Debtor's claims of exemptions.

Despite Debtor's continuing failures to file complete Schedules and her SOFA until March 17, 2006, the Trustee, in fact, had sufficient information to order a title search of the Residence and discharge his duty to liquidate assets in accordance with Section 704.  Furthermore, Debtor's continuing failure to timely file complete Schedules or her SOFA or to appear at the §341 meeting of creditors prior to July 18, 2006, did not prevent the Trustee from listing the Residence for sale and seeking further relief from the Court.

The title report ordered by the Trustee disclosed the public recording of both a first lien mortgage as well as a second lien mortgage against the Residence. The Trustee then calculated the amount of the liens, determined the fair market value of the Residence based on comparable properties, and decided that, in his view, substantial equity existed in the estate's interest in the Residence.  See Trustee's Affirmation in Support of his Notice of Presentment for an Order Compelling Debtor to File Schedules and Statement of Financial Affairs, dated November 9, 2007, at ¶ 8. [Trial Ex. 13]

As further evidence of the Trustee's belief that there was substantial, recoverable equity in the Residence, and as further evidence that Debtor's deficiencies did not

impede the Trustee in his diligently liquidating the estate's interest in the Residence, on November 30, 2005, the Trustee filed a complaint against Debtor's non-filing, separated spouse, Michael DeRise.  See Adversary Proceeding No. 05-8951(sb)  Notably, this is the same date as the entry of the Deficiency Order. In this complaint, the Trustee sought Court authority to sell the Residence free of this non-debtor's co-owner's interest under 11 U.S.C. §363(h).

Mr. DeRise initially opposed the sale.  On February 13, 2006, Mr. DeRise agreed to withdraw his opposition to this adversary.  Mr. DeRise consented to the Trustee's selling the Residence free of his interest therein, conditioned on Mr. DeRise receiving fifty percent (50%) of the net proceeds of the sale at the closing.  This settlement was memorialized in an Order Granting Motion to Sell [the property] Free and Clear of Liens, on February 24, 2006. [Adv. No. 05-8951, dkt item 12]

The Clerk of the Bankruptcy Court had issued a notice of discovered assets to creditors on November 14, 2005, setting February 14, 2006, as the bar date for creditors to file their proofs of claim.  Debtor's "Amended" Schedule F, filed on June 23, 2006, listed additional creditors.  Based thereon, the Trustee requested the Clerk of the Court send a special notice to the newly added creditors, informing them of a new bar date for filing their proofs of claim.

According to Debtor's Schedule I and SOFA, Debtor had been employed on a full-time basis as a dental assistant for a practice group in Smithtown, earning approximately $37,000 annually, with a monthly take-home pay of $2,150. According to her Schedule J, which included a projected payment of debt service on her first mortgage, her monthly net disposable income was $906.  Based on the transcript of

Debtor's testimony at the trial, she dropped out of high school before graduating.  [Trial Tr. at 41]  She has two children; the youngest, a daughter, lived with her in a one bedroom apartment. [Trial Tr. At 39-40]

### The Trustee's Motion to Evict

As previously noted, on February 24, 2006, the Trustee settled his adversary proceeding against Michael DeRise regarding the Residence. On February 16, 2006, the Trustee filed a motion seeking to evict Debtor and her family from the Residence, with a return date for a hearing set for March 21, 2006. Only when Debtor realized the importance of the Motion to Evict did she finally retain an experienced consumer bankruptcy attorney to represent her. Mr. Artura filed his Notice of Appearance on March 13, 2006.  With his assistance, Debtor filed her SOFA and her Schedules (with the exception of Schedule F) on March 17, 2006.

### The Testimony at Trial

At the November 2006  trial of this adversary proceeding, the only witness called to testify by the Trustee was Debtor.  Through her testimony, the Trustee made evident several inconsistencies between the Schedules and the SOFA. For example, in her own sworn Schedule J, Debtor represented she was actually paying the first mortgage obligation on a monthly basis. On her sworn Schedule I, Debtor represented that she received a monthly support payment from Mr. DeRise and was collecting rent from two tenants in addition to her take-home pay as a dental assistant. This resulted in a net disposable income of less than $1,000 a month. In the SOFA, however, the support payments from her separated spouse were reported as *"0.00 Child Support Payments are owed at approximately $275/week but they are received only sporadically."* [SOFA at

2; Trial Ex. 7]   As another example of an inconsistency, the Debtor reported no rental income in the SOFA. Yet, her Schedule I lists: *"10. Alimony, maintenance or support payments payable to Debtor . . . as $1,100.00"* and *"13. Other monthly income (Specify) Russ-Tenant 500.00 and Ming[Yu]-Tenant 950.00."*

At trial, Debtor testified that she had not been regularly collecting the support payments from her separated spouse despite having listed that as income on Schedule I. [Trial Tr. at 15, 27-28] Indeed, she further testified that she could not remember how much in temporary support and maintenance she had received from him during the two-year period before filing her petition, nor could she remember how much she collected from him after the petition date. [Trial Tr. at 16]  She was similarly vague or uncertain about how much she actually collected in rent from Yu. Debtor further testified that she never collected $500 a month from a tenant referred to on her Schedule I as "Russ." [Trial Tr. at 32-33]

As noted above, following remand, all trial exhibits were admitted and the parties waived further examination.  Based upon review of the trial transcript, it is clear that Debtor is unsophisticated in financial or legal matters. As she candidly testified, her primary attention during her bankruptcy case focused on caring for her young teen-age daughter and moving forward with her protracted and expensive divorce proceeding. When she finally retained an experienced consumer bankruptcy attorney, she obtained the assistance necessary to cure the primary deficiencies in her Schedules and her SOFA, and she ultimately attended her Section 341 meeting of creditors.  This Court may consider Debtor's lack of business sophistication.  In re DeRise, 2008 WL 850253, * 2; In re Smorto, No. 07-CV-2727 (JFB), 2008 WL 699502 * 1(E.D.N.Y. Mar. 12, 2008).

## Analysis of Trustee's Claims

### Section 727(a)(6): Refusal to Comply with a Lawful Order

The plain language of Section 727(a)(6) provides that one ground for denying a debtor a discharge is if debtor "refuses to comply with a lawful order of the court." "Although §727(a)(6) provides that a bankruptcy court shall deny a discharge for failure to obey a lawful court order, case law has demonstrated that the denial is subject to the discretion of the court." Weiss v. Winkler, No. 98-CV-5742, 2001 WL 423050, * 10-11 (E.D.N.Y. Mar. 30, 2001)(quoting, In re Beeber, 239 B.R. 13, 31 (Bankr. E.D.N.Y. 1999) (internal quotations omitted)(citing In re Kokoszka, 479 F.2d 990, 997 (2d Cir. 1973), cert. granted sub nom.,Kokoszka v. Belford, 414 U.S. 1091 (1973), aff'd, 417 U.S. 642 (1974), reh'g. denied, 419 U.S. 886 (1974)).

As explained by the Second Circuit in Kokoszka:

> (T)he referee must exercise his discretion whether or not to grant a discharge, even when an order has not been followed. . . . The denial of a discharge can work a serious deprivation upon a debtor, and there are many circumstances where a bankrupt's disobedience may have been inadvertent or otherwise excusable. Moreover the denial of a discharge is not the only weapon available to the referee in order to enforce his orders as a recalcitrant petitioner can also be held in contempt. This is not to be read, however, as minimizing the seriousness of Debtor's offense in disobeying a lawful order, nor do we suggest that a blatant violation should be condoned. Therefore, before denying a discharge, the referee should weigh the detriment to the proceedings and the dignity of the court against the potential harm to Debtor if the discharge is denied. He should consider such factors as the intent behind the bankrupt's acts -- were they wilful or was there a justifiable excuse; was there injury to the creditors; and is there some way that the bankrupt could make amends for his conduct.

479 F.2d at 997-98 (citations omitted).

The Fourth Circuit Court of Appeals recently addressed the proof required to deny or revoke a discharge under section 727(a)(6) in In re Jordan, 521 F.3d 430 (4th Cir. 2008). In Jordan, the Chapter 7 trustee sought to revoke the debtor's discharge. Debtor

Jordan filed her Chapter 7 bankruptcy petition on January 7, 2005. On January 10, 2005, the bankruptcy court issued a standard administrative order to the Debtor. Among the provisions of the administrative order were the following:

> • You shall not sell, transfer, remove, destroy, mutilate or conceal any of your property, and you shall make all or any part thereof available to the Trustee, when requested to do so.

> • You shall not turn over any of your property to any creditor or party in interest without the bankruptcy Trustee's knowledge and consent, unless so ordered by the United States Bankruptcy Court.

> • You shall cooperate with the Trustee as is necessary to enable the Trustee to perform the Trustee's duties as required by law.

> • You shall obey all orders of the United States Bankruptcy Court and your responsibility for doing so does not cease even after a discharge is granted. The discharge does not conclude your bankruptcy case. A discharge may be revoked, for cause.

Jordan, 521 F.3d at 432 (the "Administrative Order).

Jordan included in her schedules a property in Virginia Beach, Virginia which she listed as her home (the "Property").  At her §341 meeting, she provided the Trustee with a comparative market analysis showing the fair market value of the Property to be $225,000. Debtor received her discharge on June 24, 2005.

In November of 2005, the Trustee received an offer to purchase the Property for the sum of $227,000. The Trustee filed an application to sell the Property and, in his application, estimated a net recovery for unsecured creditors. The Trustee thereafter learned that the Property had been refinanced by Ms. Jordan for an amount in excess of the offer.  Based thereon, the Trustee withdrew his sale application and filed a complaint for the revocation of the debtor's discharge, based on her failure to comply with the

Administrative Order, which directed her to, inter alia, cooperate with the Trustee in the

administration of the estate.  When the bankruptcy court revoked Debtor's discharge, it

"found that Jordan was not wilfully uncooperative with the Trustee, but found that under

11 U.S.C. § 727(a)(6)(A) intent was a 'non-issue.'" Jordan, 521 F.3d at 433.   The

district court affirmed the bankruptcy court.  Id.

The Fourth Circuit reversed and remanded, and stated the burden to deny or

revoke a discharge as follows:

> The term used in §727(a)(6)(A) is 'refused' not 'failed.' Accordingly, the Court
> must find that the Debtors' lack of compliance with the relevant court order was
> willful and intentional. (Citations omitted)

Id.

The Fourth Circuit further noted that the "party objecting to discharge satisfies this

burden by demonstrating the debtor received the order in question and failed to comply

with its terms." Jordan, 521 F.3d at 423-34 (citing In re Ireland, 325 B.R. 836, 838

(Bankr. E.D.Mo. 2005); In re Araujo, 292 B.R. 19, 24 (Bankr. D.Conn. 2003). Once the

objecting party met his burden, the debtor has an obligation to explain his non-

compliance. Such a showing then imposes upon the debtor an obligation to explain his

non-compliance. Jordan, 521 F.3d at 434.  See also In re Fuller, 356 B.R. 493, 495

(Bankr. D.S.D. 2006) (quoting State of Missouri v. Foster, 335 B.R. 709, 716 (Bankr.

W.D.Mo. 2006)).

In this case, it is not clear when Debtor first received the Deficiency Order.

However, it is clear that between December 12, 2005, and July 18, 2006, Debtor did not

fully comply with the Deficiency Order.  However, she has adequately explained her

conduct so as not to render her non-compliance willful and intentional.  Even though

Debtor did not file complete Schedules and SOFA for six months after the petition date, that in and of itself is not tantamount to an intentional refusal to file Schedules and a SOFA. Although Debtor stipulated in the PTS that she did not timely comply with the Deficiency Order, there does not appear to have been any manifest and material injury to the creditors, inasmuch as the Trustee independently obtained the relevant information required to move forward with a sale of the Residence.

Therefore, the Trustee's claim under Section 727(a)(6) is denied.

### Section 727(a)(3):  Concealing, Falsifying, or Failing to Preserve Information

Section 727(a)(3) provides in relevant part that a debtor shall be granted a discharge, unless Debtor has "concealed, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."  Ostensibly, "[t]he purpose and intent of [§ 727(a)(3)] of the Bankruptcy Act is to make the privilege of discharge dependent on a true presentation of Debtor's financial affairs." D.A.N. Joint Venture v. Cacioli  In re Cacioli, 463 F.3d 229, 234 (2d Cir. 2006) (quoting In re Underhill, 82 F.2d 258, 260 (2d Cir. 1936))(internal quotations omitted).

In order to determine whether a debtor has violated §727(a)(3), a two-step analysis must be undertaken. Cacioli 463 F.3d at 235.  As Judge Eisenberg of this Court has recently noted:

> The creditor must prove that (1) the debtor failed to keep or preserve books and records and (2) that this failure makes it impossible to ascertain the debtor true financial condition or business transactions. See  Doubet, LLC v. Palermo (In re Palermo), 370 B.R. 599, 612 (Bankr. S.D.N.Y. 2007). If these two elements are satisfied by the creditor, the burden shifts to the debtor to demonstrate that his

failure to produce the records was justified.

In re Yerushalmi, No. 08-8037-478, 2008 WL 4107491, * 7 (Bankr. E.D.N.Y. Sep. 4, 2008).

Whether a debtor's failure to appropriately keep or preserve books and records is justified is a question of "reasonableness in the particular circumstances." Id. (quoting Underhill, 82 F.2d at 259-60). The test for justification is a practical test that takes into account the circumstances of the person involved. Cacioli, 463 F.3d at 235 (citing Morris Plan Indus. Bank of N.Y. v. Dreher, 144 F.2d 60, 61 (2d Cir. 1944)). In this connection, the court should consider a number of factors, including "the education, experience, and sophistication of Debtor[,]" Id. at 237 (quoting Meridian Bank v. Alten, 958 F.2d 1226, 1231 (3d Cir. 1992)), the degree of accuracy disclosed by Debtor, the extent of any egregious conduct on the part of debtor, and debtor's courtroom demeanor. Id. at 235-36 (citing In re Sethi, 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000)).

The debtor in Cacioli, who was a partner in several commercial real estate partnerships, did not maintain the books and records of the operation or disposition of these real estate projects. The Second Circuit Court of Appeals upheld the debtor's discharge despite the chapter 7 trustee's complaint under §727(a)(3) that Debtor had failed to maintain books and records concerning these investments, and had failed to account for his losses arising from their disposition by foreclosure or consensual sale. The Court of Appeals stressed that the debtor was quite unsophisticated in maintaining books and records for these investments, and his failure was justified by both his lack of sophistication and the fact that his partner had the primary responsibility, the formal education, the business experience, and financial sophistication for operating that part of

their business ventures.

In this case, under the totality of the facts and circumstance present, the Trustee did not meet his burden of proof under §727(a)(3).  The Trustee did not prove that Debtor failed to keep or preserve books and records so as to make it impossible to ascertain her true financial condition or business transactions.  In reaching this conclusion, this Court has considered the degree of inaccuracy in Debtor's Schedules and SOFA.  These inconsistencies, omissions, or misrepresentations between her complete Schedules and her SOFA were largely reconciled by her testimony at the November 2006 trial and an integrated reading of her bankruptcy papers.

Further, any failure to keep or preserve proper records was justified in this case by Debtor's lack of formal education beyond  a G.E.D. certificate at the high school level, her lack of any financial sophistication, her lack of any general business experience, her frustration over the delays in payment of support from her separated husband, and her primary focus on concluding her divorce proceeding.

The Trustee has also failed to meet his burden of proving, with respect to the Post-Petition Rent, that Debtor concealed, destroyed, falsified or failed to keep or preserve any recorded information from which Debtor's financial condition might be ascertained under Section 727(a)(3).  Although Debtor may have failed to keep or preserve financial records of the dates and amounts of receipts from Yu, the Trustee was able to reconstruct that accounting with a short affidavit from Yu.

Further, the Court has previously imposed a monetary sanction against Debtor for her non-compliance with her obligations as a debtor.  Contemporaneous with denying the relief sought by the Trustee under the 2007 Order, the Court entered a separate

Memorandum of Decision Imposing Sanctions Against the Debtor in the Main Case (the "Sanctions Opinion"). [Main Case dkt item 21] The Sanctions Opinion, inter alia, awarded the Trustee monetary relief against Debtor. On May 24, 2007, the Court entered a Judgment against Debtor pursuant to the Sanctions Opinion in the amount of $10,576, representing $2,500 for the Trustee's attorneys fees and $8,076 in rents collected from Yu. The Judgment further authorized the Trustee to offset this award and deduct this $10,576 from the escrow funds held by the Trustee arising from the prior sale of the Residence (the "Sanctions Judgment"). [Main Case dkt item 67] The Sanctions Judgment appropriately punished Debtor for her conduct and appropriately compensated the estate for any harm caused by Debtor's conduct.[6]

Arguably, Debtor may also have failed to preserve or maintain financial records of the dates and payments of support from Michael DeRise, but those funds were not property of the bankruptcy estate, and the Trustee has failed to prove any resulting effect on the orderly administration of this estate.

Finally, this Court has also determined that the Trustee did not meet his burden of proving that Debtor intentionally concealed or refused to disclose to the Trustee any recorded information concerning her financial affairs. In particular, this Court finds that Debtor testified truthfully and convincingly that she had no distinct recollection of signing the HUD second lien loan and mortgage documents, and that, if she had signed the note and mortgage documents, she did not do so with any real understanding of this

---

[6]Subsequently, the Court entered a Modified Sanctions Judgment and Order on July 20, 2006, which noted, in essence, that Debtor's homestead exemption was less than $50,000 based on the net proceeds of sale available, but did not reduce the $10,576 that Debtor was ordered to pay the Trustee. [Main Case dkt item 76] The Trustee appealed from this Amended Judgment [Main Case dkt item 78], but subsequently withdrew that appeal. [Main Case dkt items 90, 92]

transaction. [Trial Tr. at 35-37]

Therefore, the Trustee's claim under Section 727(a)(3) is denied.

**Section 727(a)(4)(A) or (D): Knowingly and fraudulently making a false oath or withholding any recorded information related to the debtor's property or financial affairs**

Under section 727(a)(4)(A) or (D), to deny Debtor a discharge of her pre-petition unsecured liabilities, the Trustee has to prove by a preponderance of the evidence that Debtor "knowingly and fraudulently . . . (A) made a false oath . . . or (D) withheld [from the Trustee] . . . any recorded information . . . related to [her] property or financial affairs." Whether Debtor  "knowingly and fraudulently made a false oath or withheld any recorded information relating to her property or financial affairs" is determined based on the following five factors:

- Debtor made a statement under oath;
- the statement was false;
- Debtor knew the statement was false;
- Debtor made the statement with fraudulent intent; and
- the statement related materially to the bankruptcy case.

In re Murray, 249 B.R. 223, 228 (E.D.N.Y. 2000) (quoting  In re Dubrowsky, 244 B.R. 560, 572 (E.D.N.Y. 2000)).

The debtor in Murray was a fork-lift driver on the floor of an industrial plant.  He was found by the district court to have provided false testimony at trial and numerous false oaths in his schedules and statement of financial affairs.  Murray, 249 B.R. at 232-33.  The district court, per Judge Amon, further found that as a matter of law, these statements were materially related to the administration of the estate by the chapter 7 trustee, and that they were legally sufficient to warrant a denial of his discharge under section 727(a)(4). Id. at 232.

As Judge Eisenberg of this Court recently stated in <u>Yerushalmi</u>:

When a debtor files for bankruptcy he or she does so under a duty to list all assets and answer all questions on the bankruptcy petition. If a debtor makes a material omission from his or her documentation, then it will be grounds for the court to deny a discharge.

<u>Yerushalmi</u>, 2008 WL 4107491 at * 8 (internal citations omitted),  <u>See</u> <u>also</u>, <u>In re Davison</u>, 296 B.R. 841 (Bankr. D.Kan. 2003), <u>aff'd</u>, <u>In re Davison</u>, No. KS-04-013, 01-239747, 02-6018, 2004 WL 2852352 (10th Cir. B.A.P. 2004).

The first factor has been satisfied when Debtor filed the completed Schedules and her SOFA, which were filed under oath. [PTS ¶13]  The Trustee has also satisfied the fifth factor; namely, that the these statements were material or related to the administration of this estate.  The accepted standard for  "related materially to the bankruptcy estate" is any statement "bearing a relationship to Debtor's business transactions or estate or which would lead to the discovery of assets, business dealings or existence or disposition of property." <u>Weiss v. Winkler</u>, 2001 WL 423050 at  *3 (quoting <u>In re Sawyer</u>, 130 B.R. 384, 394 (Bankr. E.D.N.Y. 1991)). "Materiality does not require a showing that the creditors were prejudiced by the false statement." <u>Murray</u>, 249 B.R. at 228.

The Court does not need to reach any determination with respect to factor two or factor three if the Trustee fails to meet his burden of proof with respect to the fourth factor, namely, Debtor made the false statements with fraudulent intent. In order to establish Debtor made false statements with fraudulent intent, the Trustee must prove actual fraud and not constructive fraud. <u>Id.</u> at 228 (quoting <u>Dubrowski</u>, 244 B.R. at 571-72).  Actual fraud may be established through intent or by reckless disregard for the

truth.  While "[t]he party objecting to the discharge must show that the information was

omitted for the specific purpose of perpetrating a fraud and not simply because Debtor

was careless or failed to fully understand his attorney's instructions, . . . a reckless

indifference to the truth is sufficient to sustain an action for fraud." Id. "Whether Debtor

made a false oath within the meaning of §727(a)(4)(A) is a question of fact." Weiss,

2001 WL 423050 at * 3 (citing Avallone v. Gross, 309 F.2d 60, 62 (2d Cir. 1962) and In

re Arcuri,116 B.R. 873, 880 (Bankr. S.D.N.Y. 1990)). "Where it  reasonably appears that

the oath is false, the burden falls upon Debtor to come forward with evidence to prove

that it was not an intentional misrepresentation. If Debtor fails to provide such evidence

or a credible explanation for his failure to do so, a court may infer fraudulent intent."

Arcuri, 116 B.R. at 884; see also Murray, 249 B.R. at 228; Weiss, 2001 WL 423050 at *

2; In re Gollomp, 198 B.R. 443, 437 (S.D.N.Y. 1996).

Debtor testified that the information she provided in her completed Schedules and

SOFA was accurate to the best of her knowledge and honest belief. Debtor testified that,

based on her yearly base salary as a dental assistant, she estimated what she honestly

believed to be her net and gross income. Given the lack of financial sophistication of

Debtor, Debtor's testimony in this regard is credible. Moreover, there is nothing in

Debtor's testimony or in the evidence before this Court to establish that the

inconsistencies or false statements noted by the Trustee were anything more than

carelessness or inadvertent mistakes made by a debtor who is unsophisticated in

financial matters.

The Trustee has not met his burden of proof with respect to each of the five

factors of §727(a)(4) as outlined in Murray.  Murray, 249 B.R. at 228. The element of

fraudulent intent to file false financial statements was simply not established.   Similarly, the Trustee has failed to meet his burden of proving Debtor was recklessly indifferent to providing true and accurate material financial information.

Unlike the debtor in Murray, this Debtor did not lie, nor was she intentionally evasive in her testimony.  She did not fail to disclose any avoidable pre-petition transfers or repayments.  Moreover, she did not fail to include any property in her Schedules.  Thus, the facts in Murray are readily distinguishable from the totality of the facts and circumstances here.

Therefore, the Trustee's claim under Section 727(a)(4) is denied.

## Conclusion

This Court concludes that, under the totality of the circumstances, the Trustee has failed to establish any of his claims by a preponderance of the evidence under Sections 723(a)(3), 723(a)(4), and 723(a)(6).  Based thereon, no relief will be awarded to the Trustee.  A separate Judgment consistent herewith will be entered.

Date: October 3, 2008
      Central Islip, New York

                              */s/ Alan S. Trust*
                              Alan S. Trust
                              United States Bankruptcy Judge

**Service List:**

Marc A Pergament, Esq.
Weinberg Gross & Pergament
400 Garden City Plaza - Suite 403
Garden City, NY 11530

Richard F Artura, Esq.
Phillips, Weiner, Quinn & Artura
165 South Wellwood Avenue
PO Box 405
Lindenhurst, NY 11757